## SMITH v. HEINLEIN et al.

### JEKYLL v. SMITH.

#### (District Court, S. D. New York.   October 6, 1904.)

1. SHIPPING—CHARTER TO CARRY MAHOGANY LOGS—REFUSAL TO TAKE CARGO OFFERED.

Evidence considered, and *held* to establish that a cargo of mahogany logs tendered for loading to a schooner under a charter were not of unusual size in the trade, and that the refusal of the master to take any except smaller logs selected by him was not justified, and rendered the vessel liable to the charterer in damages, whether such refusal was due to the unsuitableness of the vessel for the service for which she was chartered or to her want of proper tackle for loading.

In Admiralty.

MacFarland, Taylor & Costello, for John S. Smith.

Hotchkiss & Barber (Joseph B. Handy, advocate), **for Jekyll and** Heinlein et al.

ADAMS, District Judge.   The first of the above entitled actions was brought by John S. Smith, the master and part owner of the schooner J. L. Nelson to recover the sum of $2,000, besides port charges, for transporting a cargo of mahogany logs from Puerto Barrios, Guatemala, to New York City by said schooner in May, 1903, under a charter party dated February 18, 1903, made between Smith, as part owner and master, and Eggers & Heinlein, of New York.   The second action was brought by the owner of the logs against Smith to recover the damages sustained by him in consequence of the master's refusal to receive and transport all of the logs offered.

The schooner at the time of the execution of the contract was in Boston, under the charge of the libelant Smith.   The charter provided for "a full cargo under and upon deck of cedar ^and, or mahogany or other lawful merchandise," to be paid for in a lump sum, with port charges, &c., upon discharge of the cargo.   It further provided:

"Vessels capacity guaranteed 400 tons 40 c. f. actual contents mahogany, if vessel can not take the 400 tons aforesaid if tendered by shipper, charterers to have a corresponding reduction.  No logs to be cut without written consent of charterers or agent."

The schooner proceeded to Puerto Barrios and was there tendered a quantity of mahogany logs, a portion of which she received, rejecting the remainder because it was contended, they were too large for her loading hatch.   Not being furnished with a complete load of logs in sizes to suit the master, she sailed partly loaded and having delivered the logs she carried, freight being refused, an action was brought by Smith to recover the full amount of $2,000 and charges.   The cargo that was left was brought by the steamer Arcadia and the consignees declined to make any payment on the ground that the vessel had failed to perform her agreement and the owner Jekyll had suffered damages in consequence amounting to more than any benefit received from the transportation of the logs the vessel did carry.   The second action was brought to recover the damages alleged to have been sustained through

the schooner's refusal to carry the logs tendered, said to amount to $2,000.

The controversies turn upon the question whether the vessel was justified in refusing the logs.

After a careful consideration of the testimony, I conclude that she was not. By resort to a proper method of loading, including the possible removal of one of the vessel's stanchions, which could have been done without substantial injury to her, a sufficient quantity of the logs could have been taken in the hold through the loading hatch to have properly filled the vessel and given opportunity to shore up the deck so that the remainder of the tendered logs could have been brought to New York in accordance with the contract. But this was not done. The master absolutely rejected some of the large logs in the very beginning and loaded his vessel with the smaller ones, selected by him, so that no room was left under the hatchway for the proper handling of the larger logs, which might, with care and the use of proper appliances, have been loaded without detriment to her. He was doubtless influenced by the insufficiency of his tackle, though he did not finally put it upon that ground but the size of the logs. In the beginning, however, he said he had no blocks or falls large enough to hoist logs of the size tendered, but it was his duty to have provided the vessel with what was necessary. He was apparently ignorant of the requirements of the trade and the vessel's contention is based upon what is called "ordinary" logs, which it is said those tendered were not but excessive in size. The testimony, however, tends to show that the logs were not of an unusual size but what might have been expected from the character of the trade. It was, therefore, the vessel's duty to take them. The owner of a vessel is bound to see that she is seaworthy and suitable for the service in which she is to be employed. Work v. Leathers, 97 U. S. 379, 24 L. Ed. 1012. If these logs were of the ordinary commercial character in size and weight, as I find, then the vessel had no excuse for failing to take them, and the charterers and the owner of the logs, through them, are entitled to the damages suffered because she did not do so.

Decree dismissing the libel of Smith and sustaining that of Jekyll, with an order of reference.